UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORRAINE H. MULLIGAN,<br>    Plaintiff,<br><br>VS.<br><br>SUNBRIDGE HEALTHCARE<br>CORPORATION d/b/a<br>MEDIPLEX OF STAMFORD<br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 2004 MAR 31  P 2: 31<br><br>U.S. DISTRICT COURT<br>Civil No. 3:03CV695 (AVC) |

## RULING ON DEFENDANT'S MOTION TO DISMISS

This is an action for damages alleging wrongful termination of employment. It is brought by the plaintiff, Lorraine H. Mulligan, to redress injuries she suffered when the defendant Sunbridge Healthcare Corporation d/b/a Mediplex of Stamford ("Mediplex") terminated her employment as director of nursing after she conducted an investigation of patient abuse. Mulligan alleges that the termination violated common law tenants that an employee may not be terminated in violation of an important public policy.

Mediplex now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), asserting that the complaint fails to state a claim upon which relief can be granted. The issues presented are: 1) whether the complaint sufficiently states a claim for wrongful termination of employment in violation of an important public policy of the state of Connecticut; and, 2) whether the complaint states a claim for breach of an implied covenant of good faith and fair dealing.

For the reasons hereinafter, the court concludes that the complaint states both a claim for wrongful termination of employment and breach of the implied covenant of good faith and fair dealing. The motion to dismiss is therefore denied.

## FACTS

On September 3, 2002, the complaint alleges that, Mediplex hired Mulligan, a white female, as the director of nursing for its Stamford facility on an at-will basis. Her duties as director of nursing included, among other things, investigating any allegations that staff members abused patients at the facility. To ensure Mediplex's compliance with Connecticut Administrative Regulation § 19-13-D8t[1], Mulligan formulated a standard protocol for Mediplex to follow for investigating allegations of patient abuse.

On January, 27, 2003, a resident's son reported to Mediplex that an employee physically abused his mother at the Stamford facility. Mulligan initiated an investigation of the alleged incident, and personally interviewed the resident. During the interview the resident told Mulligan that a black male physically

---

[1]Connecticut Administrative Regulation § 19-13-D8t provides in relevant part: "An investigation shall be initiated by the facility within twenty-four (24) hours within the discovery of a patient(s) with an injury of suspicious or unknown origin or receipt of allegation of abuse. The investigation and the findings shall be documented and submitted to the facility's active organized medical staff for review. This document shall be maintained at the facility for a period of not less than three (3) years.

abused her. The resident made the same allegation when questioned by a Mediplex social worker.

In the course of the investigation, Mulligan discovered that only one black male was on duty during the time of the alleged incident. At the suggestion of her supervisor and after consulting with union representatives, Mulligan assembled a number of employees meeting the description of the alleged abuser. Mulligan assembled the employees in order to see if the resident could identify the abuser. After viewing the gathered employees, the resident could not make a positive identification. Lacking any additional proof of abuse, Mediplex took no disciplinary action against the suspected employee.

On January, 31, 2003, union representatives charged Mulligan with racial profiling. As a result, Mediplex barred Mulligan from its nursing home facility and required her to work from home.

Mediplex prohibited Mulligan from returning to work until she met certain conditions. Mediplex required Mulligan to: 1) sign a letter of apology regarding the manner in which she conducted the investigation; 2) meet with and apologize to all staff members; 3) undergo diversity training along with all staff members; 4) have no direct role in future disciplinary matters; and, 5) undergo a review of her previous disciplinary actions.

Mulligan refused to sign the letter of apology, asserting

that her investigation was legitimate and reasonable. On February 14, 2003, after she refused to apologize, Mediplex requested that Mulligan resign from her position.

## STANDARD

The function of a motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6) is to assess the legal sufficiency of the complaint. Ryder Energy Distrib. Corp. V. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). The issue the Court decides is not whether the plaintiff will ultimately prevail but whether the plaintiff should be entitled to offer evidence to support its claims. Iosa v. Gentiva Health Services, Inc., 299 F.Supp.2d 29, 31 (D. Conn. 2004) citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In deciding a motion to dismiss pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6), the court construes all well pleaded factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiffs. Still v. DeBuono, 101 F.3d 888 (2nd Cir. 1996); Finnegan v. Campeau, 915 F.2nd 824, 826 (2nd Cir. 1990).

"A motion to dismiss should not be granted for failure to state a claim unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him or her to relief." Iosa v. Gentiva Health Services, Inc., 299 F.Supp.2d 29, 31-32 (D. Conn.

2004) citing Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 329 (2nd Cir. 1997).

In considering the motion made under Rule 12(b)(6), the Court limits consideration to the facts set forth in the complaint, any documents incorporated by reference or attached thereto, and matters of which the Court may take judicial notice. Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1088, 1092 (2nd Cir. 1995).

## DISCUSSION

Mediplex moves to dismiss counts one, two, and three of the complaint. Mulligan has withdrawn count two alleging Mediplex violated Conn. Gen. Stat. § 31-51. Count one alleges wrongful termination of employment in violation of the public policy of the state of Connecticut. Count three alleges that Mediplex breached the covenant of good faith and fair dealing, implied in it employment contract with Mulligan.

1. Wrongful Termination of Employment

Mediplex first claims that the complaint does not state a claim for wrongful termination of employment because an important public policy is not implicated. Further, Mediplex argues that even if there is a valid public policy, the complaint fails to allege facts to show that Mediplex terminated Mulligan in violation of that public policy, as Mediplex simply terminated Mulligan's employment on account of her failure to sign a letter

of apology. Mulligan responds that, indeed, an important public policy is implicated, that is, the public policy of the state of Connecticut to protect nursing home residents from physical abuse by investigating and reporting alleged abuse, and that, the complaint sufficiently alleges that her employment was termination in violation of that public policy.

In Connecticut, an employer is free to terminate an at-will employee for any reason, with or without justification. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980). However, Connecticut has "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstratably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Carbone v. Atlantic Richfield Co., 204 Conn. 460, 466-67 (1987)(emphasis in original; internal quotation marks omitted; citation omitted).

"[T]he public policy exception to the general rule allowing unfettered termination of an at-will employment is a narrow one...[C]ourts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159 (2000) quoting Parsons v. United Technologies Corp., 243 Conn. 66, 79 (1997). In evaluating whether an important public policy has been violated the court looks at whether the plaintiff has

alleged that the discharge violated an explicit statutory provision, constitutional provision, or some judicially conceived notion of public policy. Faulkner v. United Technologies Corp., 240 Conn. 576, 581 (1997).

Here, Mulligan points to Conn. Gen. Stat. § 19a-550, which states in relevant part:

> There is established a patients' bill of rights for any person admitted as a patient to any nursing home facility... Said patients' bill of rights shall provide that each such patient...is free from mental and physical abuse...

Conn. Gen. Stat. § 19a-550(b)(8). Mulligan also specifically points to Conn. Gen. Stat. § 17b-451, which places mandatory reporting requirements on

> any resident physician or intern..., nurse's aide or orderly in a nursing home facility, any person paid for caring for a person in a nursing home facility, any staff person employed by a nursing home facility, any patients' advocate and any licensed practical nurse, [etc.]... who has reasonable cause to suspect or believe that any elderly person has been abused, neglected, exploited, or abandoned.

In addition to the above, Connecticut administrative regulations impose investigation requirements on operators of nursing homes and their staff. Connecticut Agencies Regulations § 19-13-D8t requires a nursing home facility to initiate an investigation into alleged abuse within twenty-four hours.

These statutes and regulations demonstrate that an important public policy exists to protect nursing home residents from

7

physical abuse. Consequently, the motion to dismiss the wrongful termination claim based on a lack of a public policy interest is denied. Further, the complaint sufficiently alleges that Mulligan was terminated in violation of that public policy. While Mediplex claims that Mulligan lost her job because she refused to sign the letter of apology, and Mediplex did not terminate Mulligan until after she refused to sign a letter of apology, an inference can be drawn that Mediplex terminated Mulligan because she conducted the investigation of the alleged abuse. Mediplex's motion to dismiss is therefore denied.

2. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Mediplex next moves to dismiss count three of the complaint alleging breach of the implied covenant of good faith and fair dealing. Mediplex argues that, because the termination did not violate any important public policy, dismissal is warranted. Mulligan responds that becuase the termination violated an important public policy, she is able to maintain a claim of breach of an implied covenant of good faith and fair dealing.

To establish a breach of the implied covenant of good faith and fair dealing in an at-will employment context, Mulligan has the burden of proving that her termination involved an impropriety that contravened some important public policy. <u>Carbone v. Atlantic Richfield</u>, 204 Conn. 460, 470-71 (1987)("Where an employment contract is clearly terminable at

will,... absent a showing that the discharge involves an impropriety which contravenes some important public policy, an employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing"); <u>Magnan v. Anaconda Industries, Inc.</u>, 193 Conn. 558, 572 (1984). As the court has already concluded that, in the state of Connecticut, there is an important public policy to protect nursing home residents from physical abuse, the court concludes that the complaint states a cause of action for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (document no. 11) is DENIED.

It is so ordered this 31st day of March 2004, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge