# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE H. MULLIGAN, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:03CV695(AVC) |
| | : | |
| VS. | : | |
| | : | |
| SUNBRIDGE HEALTHCARE | : | |
| CORPORATION d/b/a | : | |
| MEDIPLEX OF STAMFORD | : | |
| Defendant. | : | FEBRUARY 3, 2004 |

## FIRST SUBSTITUTED COMPLAINT

### I.   PRELIMINARY STATEMENT

1.  This action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees for the race and color discrimination suffered by the plaintiff when the defendant, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, and the Connecticut Fair Employment Practices Act, terminated the plaintiff's employment on account of the plaintiff's race and color.  In addition, the plaintiff seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorney fees for the unlawful retaliation directed against the plaintiff by the defendant as a direct result of the  plaintiff's participation in activity

protected by the provisions of Title VII of the Civil Rights Act of 1964, as amended, and the provisions of the Connecticut Fair Employment Practices Act.

## II.    JURISDICTION

2.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

3.    Jurisdiction is invoked pursuant to Title 28 U.S.C. §1343(a)(3), Title 28 U.S.C. §1343(a)(4) and Title 42 U.S.C. §2000e-5(f).

4.    Additionally, this court has jurisdiction over the plaintiff's claims pursuant to Title 28 U.S.C. 1332, diversity of citizenship, in that the plaintiff is a resident of the State of Connecticut and the defendant is a corporation domiciled in the State of New Mexico, and the amount in controversy exceeds $75,000.00.

5.    All conditions precedent to jurisdiction under Section 706 of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e-5(f)(3), have occurred or have been complied with in the following manner:

    a)    A charge of employment discrimination on the basis of race and color was filed on or about March 18, 2003, with both the State of Connecticut Commission on Human Rights and Opportunities and with the United States Equal Employment

Opportunity Commission, which filing was within 180 days of the commission of the unlawful employment practices alleged herein;

b) By letter dated December 12, 2003, the plaintiff was issued a "Notice Of Right To Sue" by the United States Equal Employment Opportunity Commission (a copy of which is attached and labeled Exhibit 1).

c) By a communication dated December 12, 2003, the plaintiff was issued a "Release of Jurisdiction" by the Connecticut Commission on Human Rights and opportunities (a copy of which is attached and labeled Exhibit 2).

6. Declaratory, injunctive, compensatory and equitable relief is sought pursuant to Title 28 U.S.C. §2201, §2202 and Title 42 U.S.C. §2000e-5(g).   Compensatory and punitive damages are sought pursuant to Title 42 U.S.C. §1981a.

7. The court possesses supplemental jurisdiction over the plaintiff's claims brought under the provisions of the Connecticut Fair Employment Practices Act and Connecticut common law.

8. Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §2000e-5(k), and Title 42 U.S.C. §1988.

**III.    <u>VENUE</u>**

9.  This action properly lies in the District of Connecticut pursuant to Title 29 U.S.C. §1391(b) because the claim arose in this judicial district, and pursuant to Title 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

**IV.    PARTIES**

10. The plaintiff is a citizen of the United States and resides in Bridgeport, Connecticut.

11. The plaintiff is of the color white and of the Caucasian race.

12. The defendant is an employer, which engages in an industry affecting commerce and, upon information and belief, employs more than 15 regular employees.

13. The defendant is a person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(a).

14. The defendant is an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e(b).

15. The defendant is a New Mexico corporation with its principal place of business at 101 Sun Avenue NE, Albuquerque, NM 87109.

**V.    STATEMENT OF FACTS**

16. The defendant owns, operates and manages an elderly care nursing home facility located

4

at 710 Long Ridge Road, Stamford, Connecticut, known as Mediplex of Stamford.

17. The defendant provides skilled nursing care for the elderly residents of Mediplex of Stamford.

18. On September 3, 2002, the defendant hired the plaintiff as its director of nurses.

19. From September 3, 2002 to the date of her termination on February 14, 2003, the plaintiff performed her duties and responsibilities as the defendant's director of nurses in an exemplary and thoroughly professional manner.

20. As the defendant's director of nurses, the plaintiff was responsible for investigating allegations of patient abuse lodged against members of the defendant's nursing staff, including its certified nursing assistants.

21. Upon the plaintiff's employment with the defendant as its director of nurses, the plaintiff was primarily responsible for the adoption by the defendant of a standard protocol for the investigation of allegations of patient abuse to insure compliance with state regulations, in particular, Connecticut General Regulations § 19-13-D8t.

22. A requirement of the protocol adopted by the defendant for the investigation of allegations of patient abuse provided for the immediate suspension of the nursing staff member against whom an allegation of patient abuse had been lodged pending the completion of the investigation.

23. On January 27, 2003, the defendant received information that a resident may have been physically abused by an employee of the defendant.

24. A resident of Mediplex of Stamford, in the presence of her son, stated that "a young black man came into her room at 9:00 p.m. and pinched her".

25. The plaintiff, in the performance of her duties and responsibilities as the Director of Nursing, interviewed the resident who had been the alleged victim of the abuse.

26. During the course of the plaintiff's interview with the resident, the resident stated   that the abuser was a black male.

27. Additionally, the resident made the same allegation when questioned by the defendant's social worker.

28. Similarly, the resident made the identical claim to the nurse assigned to her unit.

29. As required by the provisions of both the Connecticut Administrative Regulations and the defendant's resident abuse protocol, the plaintiff initiated an investigation into the allegation of resident abuse.

30. Based on the plaintiff's investigation, it was determined that there was only one African American male employee of the defendant who was on duty on the date of the alleged incident who would have provided care for the resident in question.

31. At the suggestion of the defendant's administrator, Allan DeBlasio, who was the plaintiff's supervisor, a number of employees meeting the description of the abuser independently provided by the resident, including the certified nursing assistant who was on duty at the time the resident claimed to have been abused, were assembled by two union representatives, who represented the employees belonging to the bargaining unit partly comprised of certified nursing assistants, at the request of the plaintiff with the purpose of determining if the resident could identify the alleged perpetrator of the abuse from those assembled.

32. In requesting the union representatives assemble a number of the defendant's employees for the purpose of attempting to identify an alleged abuser, the plaintiff, at all times, was carrying out her responsibilities to investigate allegations of patient abuse.

33. Neither the employee nor his union representatives complained of the investigative technique used by the plaintiff at the suggestion of her supervisor, Allan DeBlasio, to determine the veracity of the allegation of resident abuse.

34. The sole reason that the plaintiff requested that the union representatives assemble African American employees was based on the allegation independently made by the resident that she had been pinched by a black male.

35. After viewing the assembled employees, the resident was unable to identify her alleged abuser.

36. As a result of the resident's inability to identify her alleged abuser, the resident's periods of mental confusion and the lack of visible signs of trauma, the plaintiff determined that no disciplinary action should be taken against the employee who had been a subject of the investigation.

37. At all times, the plaintiff acted responsibly and lawfully in carrying out her responsibilities and duties to investigate allegations of resident abuse.

38. The measures taken by the plaintiff to investigate the allegation of resident abuse were reasonable, scrupulous and legitimate, untainted by racial bias or prejudice.

39. The plaintiff on January 31, 2003, was unfairly and discriminatorily subjected by union representatives of the bargaining unit comprised, in part, of certified nursing assistants to the frivolous charge of racial profiling.

40. The union representatives directed this baseless charge of racial profiling against the plaintiff solely because she was Caucasian.

41. As a result of the illegitimate charge of racial profiling made against the plaintiff, the defendant, on January 31, 2003, barred the plaintiff from its nursing home facility, requiring the plaintiff to work from home.

42. Subsequently, the defendant required the plaintiff, among other actions, to sign a letter of apology regarding the manner in which the plaintiff conducted the investigation of resident abuse.

43. Besides signing a letter of apology, the plaintiff would be required by the defendant to:

    a) Meet with staff on all shifts to apologize;

    b) Along with all other employees, undergo diversity training;

    c) Be excluded from any direct role in disciplinary matters; and

    d) Undergo a review of her previous disciplinary actions.

44. The plaintiff refused to sign a letter of apology because the actions she had taken to investigate the allegation of resident abuse were legitimate and reasonable.

45. The defendant on February 14, 2003, requested that the plaintiff resign from her position as the defendant's Director of Nurses.

46. The defendant asserted to the plaintiff that if she did not agree to the foregoing requirements, the defendant would be subjected to charges of discrimination by its African American employees, subjecting it to action by the National Association for the Advancement of Colored People (NAACP).

47. The plaintiff's actions in conducting the investigation of resident abuse were completely devoid of any discriminatory motive.

9

48. When the plaintiff refused to resign, the defendant terminated her employment.

49. Various officials of the defendant acknowledged to the plaintiff that the defendant's treatment of her was unfair.

50. These same officials of the defendant further acknowledged that the plaintiff had at all times acted professionally and responsibly in addressing the allegation of resident abuse made by a resident at Mediplex of Stamford.

## VI.     FIRST CAUSE OF ACTION (Unlawful Race and Color Discrimination)

51-100. Paragraphs 1-50 are made Paragraphs 51-100.

101. The plaintiff was terminated as a result of her legitimate and legally required efforts to investigate an allegation of resident abuse directed at an African American employee of the defendant.

102. But for the race and color of the plaintiff, the defendant would not have terminated her employment.

103. Because the plaintiff's race and color were motivating factors and made a difference in the decision by the defendant to terminate the plaintiff's employment, the defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended.

104. The defendant engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

105. The defendant's termination of the plaintiff's employment constitutes unlawful race and color discrimination.

## VII. SECOND CAUSE OF ACTION (Unlawful Retaliation)

106-210. The plaintiff incorporates as if re-alleged paragraphs 1 through 105.

211. The defendant terminated the plaintiff's employment as a result of the plaintiff's opposition to unfair claims asserted by certain employees of the defendant that she had been involved in racist activities.

212. The plaintiff's defense against allegations that she had participated in racist conduct is activity protected under both the opposition and participation provisions of Title VII of the Civil Rights Act of 1964, as amended.

213. The defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful race and color discrimination, and the plaintiff's participation in the defendant's investigation into the complaint of discriminatory behavior filed against the plaintiff, when the defendant imposed, as a condition of the plaintiff's continued employment, the requirement that the plaintiff acknowledge that she

had behaved in a discriminatory manner toward the defendant's African-American employees.

214. Because the plaintiff's opposition to the defendant's race and color discrimination and her participation in the defendant's investigation of discriminatory behavior were motivating factors and made a difference in the decision by the defendant to terminate the plaintiff's employment, the defendant violated Title VII of the Civil Rights Act of 1964, as amended, in particular, Title 42 U.S.C. § 2000e-3(a).

215. The defendant engaged in discrimination against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

**VIII.    THIRD CAUSE OF ACTION (Violation of Connecticut Fair Employment Practices Act)**

216-430. The plaintiff incorporates as if re-alleged paragraphs 1 through 215.

431. The defendant's actions violate the provisions of the Connecticut Fair Employment Practices Act banning race and color discrimination, and banning discrimination on the basis of opposition to race and color discrimination as well as participation in an investigation of a claim of racist conduct, including the denial of such claim.

**IX.    FOURTH CAUSE OF ACTION (Unlawful Discharge in Violation of the Public Policy of the State of Connecticut)**

432-646. The plaintiff incorporates as if re-alleged paragraphs 1 through 215.

647. As the owner, operator and manager of a nursing home facility, the defendant was required to follow the mandates of the Connecticut General Statutes and the Connecticut Administrative Regulations regarding the operation and management of a nursing home facility, including the employment of a director of nurses.

648. As the director of nurses for the defendant, the plaintiff was required to adhere to the directives of the Connecticut General Statutes and the Connecticut Administrative Regulations regarding the operation and management of a nursing home facility, in particular Connecticut Administrative Regulation § 19-13-D8t, which details the duties and responsibilities of a director of nurses in a nursing home facility.

649. Connecticut Administrative Regulation § 19-13-D8t provides, in relevant part, "[a]n investigation shall be initiated by the [nursing home]facility within twenty-four (24) hours of the discovery of a patient(s) with an injury of suspicious or unknown origin or receipt of an allegation of abuse.  The investigation and the findings shall be documented and submitted to the facility's active organized medical staff for review.  This document shall be maintained at the facility for a period of not less than three (3) years."

650. The plaintiff was terminated as a result of her legitimate and legally required efforts to investigate an allegation of resident abuse.

651. State law and state administrative regulations mandate that the defendant report and investigate all incidents of patient abuse regardless of the race or color of the employee accused of committing patient abuse to the State of Connecticut Department of Public Health, which the plaintiff did with regard to the aforementioned incident involving an allegation of patient abuse.

652. The plaintiff's employment was terminated by the defendant on account the legitimate and honest investigation which she fairly and non-discriminatorily conducted regarding an allegation of patient abuse.

653. In terminating the plaintiff's employment, the defendant violated the public policy of the State of Connecticut as embodied in the general laws and regulations of the State of Connecticut.

654. The public policy of the State of Connecticut mandates the investigation of complaints of patient abuse occurring at nursing home facilities located in the State of Connecticut.

655. The plaintiff was terminated by the defendant as a result of the legitimate, scrupulous and professional investigation she conducted as the defendant's Director of Nurses into an allegation of patient abuse at the nursing home facility, Mediplex of Stamford, owned

and operated by the defendant.

656. The plaintiff's termination violated the public policy of the State of Connecticut.

657. The plaintiff possessed no adequate administrative remedy that would provide her relief from the unlawful acts of the defendant.

658. As a result of the defendant's unlawful actions in terminating the plaintiff's employment, the plaintiff has suffered monetary damages including loss of pay and benefits.

659. As a further result of the defendant's unlawful actions in terminating the plaintiff's employment, the plaintiff has suffered severe emotional distress.

660. It is a violation of the public policy of the State of Connecticut for the defendant, the owner and operator of a nursing home facility in the State of Connecticut, to terminate the employment of its Director of Nurses based on the Director of Nurse's non-discriminatory efforts to investigate an allegation of resident abuse.

661. It is a violation of the public policy of the State of Connecticut for the defendant, the owner and operator of a nursing home facility in the State of Connecticut, to fail to support its Director of Nurses, who at the time was discharging the defendant's duties and responsibilities to investigate allegations of resident abuse, against frivolous charges of race discrimination in the way the investigation was conducted.

662. The defendant, pursuant to the public policy of the State of Connecticut, had the

affirmative duty and obligation to support the plaintiff against frivolous charges of race discrimination resulting from her investigating a complaint that an African American employee had abused a resident at the defendant's facility in Stamford, Connecticut.

663. The public policy of the State of Connecticut mandates that allegations of patient abuse be investigated by the owners and operators of a nursing home facility regardless of the race or color of the accused abuser.

664. The plaintiff acted at all times in a manner fully consistent with her duties and responsibilities as the defendant's Director of Nurses and in accordance with the public policy of the State of Connecticut when she investigated the aforementioned allegation of resident abuse.

665. As a result of the defendant's unlawful actions in terminating the plaintiff's employment, the plaintiff has suffered monetary damages including loss of pay and benefits.

666. As a further result of the defendant's unlawful actions in terminating the plaintiff's employment, the plaintiff has suffered severe emotional distress.

## X. FIFTH CAUSE OF ACTION (Breach of the Covenant of Good Faith and Fair Dealing)

667-900. The plaintiff incorporates as if re-alleged paragraphs 432 through 666.

901. The actions of the defendant breached the implied covenant of good faith and fair dealing

16

when they fired the plaintiff for the reasons outlined above, thereby prohibiting the plaintiff from receiving the benefit of her agreement.

902. The defendant had a common law duty to act with good faith and fair dealing toward the plaintiff.

903. The defendant acted in bad faith when it terminated the employment of the plaintiff for reasons based on the legitimate, scrupulous and professional investigation she conducted as the defendant's Director of Nurses into an allegation of patient abuse at the nursing home facility, Mediplex of Stamford, owned and operated by the defendant.

904. Connecticut law imposes on the defendant the legal obligation to thoroughly investigate allegations of patient abuse.

905. The plaintiff was acting pursuant to her legal responsibility as the defendant's Director of Nurses and pursuant to the defendant's protocol for investigating allegations of patient abuse, when she was terminated for conducting a legitimate, scrupulous and professional investigation of an allegation of patient abuse.

906. The defendant acted in bad faith when it terminated the plaintiff's employment as a result of her use of a legitimate and reasonable investigative procedure which had been recommended to her by her supervisor.

907. The defendant owed the plaintiff the duty to support the plaintiff's legitimate efforts to

investigate the aforementioned allegation of resident abuse.

908. The defendant breached its duty of good faith and fair dealing when it failed to support the plaintiff against frivolous claims of racial profiling resulting from the plaintiff's actions, untainted by race discrimination, to fully and fairly investigate an allegation of resident abuse.

909. As a result of the defendant's actions in terminating the plaintiff's employment, the plaintiff has suffered monetary damages including loss of pay and benefits.

## X.  **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

1. **FIRST CAUSE OF ACTION**

   a. Declare the conduct engaged by the defendant to be in violation of the guaranteed the plaintiff pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended.

   b. Award plaintiff equitable relief of back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

   c. Award plaintiff compensatory and punitive damages;

   d. Award plaintiff costs and attorney fees; and

   e. Grant such other and further relief as the Court may deem just and proper.

2. **SECOND CAUSE OF ACTION**

   a. Declare the conduct engaged by the defendant to be in violation of the guaranteed the plaintiff pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended.

   b. Award plaintiff equitable relief of back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

   c. Award plaintiff compensatory and punitive damages;

   d. Award plaintiff costs and attorney fees; and

   e. Grant such other and further relief as the Court may deem just and proper.

**3. THIRD CAUSE OF ACTION**

    a. Declare the conduct engaged by the defendant to be in violation of the guaranteed the plaintiff pursuant to the provisions of the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46-58 et seq.

    b. Award plaintiff equitable relief of back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

    c. Award plaintiff compensatory and punitive damages;

    d. Award plaintiff costs and attorney fees; and

    e. Grant such other and further relief as the Court may deem just and proper.

**4. FOURTH CAUSE OF ACTION**

    a. Compensatory damages.

    b. Costs.

    c. Such other relief as the Court may deem appropriate.

**5.  FIFTH CAUSE OF ACTION**

a. Monetary damages in the form of back pay and benefits.

b.   Monetary damages in the form of front pay and benefits.

c.   Costs.

d.   Such other relief as the Court may deem appropriate.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

THE PLAINTIFF – LORRAINE H. MULLIGAN

BY_____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Email: thomasbucci@earthlink.net
Fed. Bar #ct07805

## <u>CERTIFICATION</u>

I hereby certify that copies of the foregoing <u>*First Substituted Complaint*</u> have been sent, by First Class Mail, postage prepaid, on this 3nd day of February 2004, to:

Margaret Armstrong Weiner, Esquire
JACKSON LEWIS LLP
177 Broad Street
P.O. Box 251
Stamford, CT 06904-0251
Tel: 203-961-0404
Fax: 203-324-4704
Federal Bar No. ct18084
Email: weinerm@jacksonlewis.com

_____
Thomas W. Bucci