UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 SEP 17 P 4: 31

U.S. DISTRICT COURT
HARTFORD, CT.

LORRAINE MULLIGAN,
        -Plaintiff


-v-                                                        3:03 CV 695 (AVC)


SUNBRIDGE HEALTHCARE
CORPORATION d/b/a
MEDIPLEX OF STAMFORD,
        -Defendant


## MEMORANDUM AND ORDER

On September 29, 2004, at 10:00 a.m., the court will conduct a hearing to inquire into the *bona fides* of defendant's conduct with respect to a duly noticed settlement conference in this case, and, more specifically, to determine whether the defendant's apparent failure to comply with this court's order to send a duly empowered decision-maker to a settlement conference on September 14, 2004, was a deliberate contempt of court; an ill-conceived, bad faith litigation tactic; or a dreadful misapprehension on the part of Brian Cooper and Gerry Collins, two of defendant's in-house lawyers who, despite an explicit court order stating that the conference must be *personally* attended by someone with authority to

settle, and further specifying that it was not sufficient to be "available by telephone," may have mistakenly concluded that conference in question was not important enough for them to personally attend, and that, regardless of the court's order, they would nevertheless remain in California and communicate with their lawyer by cell phone.[1]

The order setting the September 14, 2004, settlement conference is clear. It states in relevant part that:

> Counsel shall be accompanied by the appropriate persons with the authority to settle. It will not be sufficient for such individuals to be "available by phone." See Nick v. Morgan's Food, Inc., 99 F.Supp.2d 1056, 1062-63 (E.D. Mo. 2000).

(See Dkt. #30). This order issued on June 2, 2004, over two months before the settlement conference to make sure that a *legitimately empowered* decision maker with reasonable discretion would be there. Indeed, the whole point of this extraordinarily long notice was to ensure that there would be present a *decision-maker*, someone with real discretion, someone who would not just listen with an open mind, but who could be persuaded, and who could settle the case if

---

[1] It is ordered that defendant's employees, Counsel Brian Cooper and Vice President Gerry Collins are ordered to personally attend, and be present during, the entire September 29, 2004, hearing. They have also been ordered to attend a second settlement conference which the court has scheduled for 10:00 a.m., September 20, 2004. Having injected themselves into this case, they, as representatives of a *party*, would be well-advised to obey these orders.

he or she chose, not someone cleverly dispatched with an unreasonably small range of authority and instructions to "call California" when the paltry limit had been reached.

There are many good reasons why settlement conferences must be attended by people who truly have the authority to settle, and why a decision-maker's being "available by telephone" just does not work. No federal judge has addressed this issue better than District Judge Rodney Sippel, the author of <u>Nick v. Morgan's Foods</u>, <u>supra</u>, a decision the defendant in this case knew about for over two months before the conference that it ultimately derailed.

The <u>Nick</u> decision cited in the court's order poignantly explains why a real, genuine, <u>bona fide</u> decision-maker must be present at the conference. Since it is manifest that the defendant's decision-makers have not read, or do not understand, this decision, the court sets forth below its salient parts:

> Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. Availability by telephone is insufficient because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's arguments, and the neutral's input. The absent decision-maker needs to be present and hear first hand the good facts and the bad facts about their case.
> Instead, the absent decision-maker learns only what his or her attorney chooses to relate over the phone. This can be expected to be largely a recitation of what has been conveyed in previous discussions. . . . Under

this dynamic it becomes all too easy for the absent decision-maker to reject the attorney's new advice, reject the new information, and reject any effort to engage in meaningful negotiations. It is quite likely that the telephone call is viewed as a distraction from other business being conducted by the absent decision-maker. In that case the absent decision-maker will be preoccupied with some other matter demanding her attention at the time she is asked to evaluate new information in a telephone call. Confronted with distractions and inadequate time to evaluate the new information meaningfully, the absent decision-maker's easiest decision is to summarily reject any offer and get back to the business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.

Unfortunately, as discussed in <u>Dvorak v. Shibata</u>, 123 F.R.D. 608 (D. Neb. 1988) occasionally parties may use the absence of the decision-maker as a weapon. Such parties "feign a good faith settlement posture by those in attendance at the conference, relying on the absent decision-maker to refuse to agree," thereby taking advantage of their opponent. <u>Id.</u>, at 610.

In such cases the offending party is able to "gain information about [its] opponent's case, strategy, and settlement posture without sharing any of its own information." [<u>Raad v. Wal-Mart Stores, Inc.</u>, 1998 WL 272879, at *5 (D. Neb. May 6, 1998)]. Instead of a negotiation session, the mediation becomes a stealth discovery session, to the unfair benefit of the party whose decision-maker is not in attendance. When that happens, the Court's referral to mediation has been callously misused. "Meanwhile, the opposing side has spent money and time preparing for a

> good-faith, candid discussion toward settlement. If the other party does not reciprocate, most if not all of that money and time has been wasted." Id.
> In sum, when a corporate representative with the authority to reconsider that party's settlement position is not present, the whole purpose of the mediation is lost, and the result is an even greater expenditure of the parties' resources, both time and money, for nothing.
> Morgan's Foods did not participate in good faith in the ADR process. The absence of good faith is evidenced not by the parties failure to reach settlement, but by Morgan's Foods' failure to comply with the Court's August 2, 1999 Referral Order. Morgan's Foods' failure to participate in the ADR process in good faith would not be vindicated by a defendant's verdict at trial. Whether the parties participated in good faith in the ADR process is measured by their actual conduct at the mediation, not by the hypothetical result of a subsequent trial.

Although more detailed factual findings will be forthcoming after the evidentiary hearing, at this stage of the proceedings at least, it appears that the defendant's decision-makers in this case may have *deliberately* violated this court's order by remaining in California, taking their attorney's phone calls when it suited them, and telephonically dictating their position from afar. This was unfair to the plaintiff, her counsel, and the court. It did not create a good impression of the defendant Sunbridge Healthcare, d/b/a Mediplex of Stamford. The court sincerely hopes that it is not a policy of the defendant to disregard court orders and be

disrespectful.

The defendant's failure to attend the conference and negotiate in good faith not only sabotaged the court's efforts, it has thus far unfairly inflicted approximately $4,000 in unnecessary attorney's fees and costs[2] on the plaintiff, an intelligent, articulate, professional woman who alleges she was wrongfully fired as a consequence of her investigation of the physical abuse of an eighty year old female patient in one of defendant's Connecticut nursing homes, in violation of state law, and perhaps federal civil rights laws as well. In the event plaintiff's claims survive a motion for summary judgment, they will go before a jury, which could find that the plaintiff was not simply fired illegally, but that she was subjected to outrageous behavior at the hands of the defendant. In these circumstances, Sunbridge should not be so cavalier.

More particularly, it appears at this stage of the proceedings that the court's efforts to settle this case on September 14th may

---

[2] Plaintiff's counsel has been instructed to file an affidavit setting forth the attorney's fees and costs that have been incurred by the plaintiff, as well as the wages plaintiff lost by missing work to attend the conference on September 14. Defendant's counsel may, not later than September 24, 2004, file whatever papers it wishes challenging why an order should not enter requiring the defendant to immediately reimburse the plaintiff this sum. Chambers copies will be hand delivered to the undersigned not later than 4:00 p.m., September 24, 2004.

have been subverted by defendant's counsel, Brian Cooper, and by its vice president, Gerry Collins, who, when they could be reached at all, communicated with their lawyer by cell-phone, instructing her to deliver to the court edicts so obdurate and unrealistic that they cause the court to wonder whether defendant truly appreciates among other things: the seriousness of plaintiff's allegations; the enormity of defendant's financial exposure; the negative impact that a plaintiff's verdict will have on the defendant's reputation and profits; the risk of such a verdict's encouraging still other lawsuits against the defendants; and the potential cost of defending this case if it escalates with the joinder of a labor union.

Surely, for defendant to decree, as it did, that, unless plaintiff capitulates to their offer, it would "just as soon try the case" is not responsible, it is reckless and irresponsible. Such caprice and bravado inevitably evaporates as trial approaches and more sensible people focus on their vulnerabilities. It disserves the defendant. Lawyers who actually try jury cases to verdict in courts seem to know this. Lofty though they may regard themselves, the defendant's decision-makers may not so freely squander the time and the scarce public resources of a United States court, thoughtlessly committing the court to the trial of a case that most competent in-house lawyers would be delighted to

immediately settle for the sum at which the case could have been settled on September 14, 2004. And, despite what may be its feelings to the contrary, Sunbridge certainly is not free to abuse the process of this court by inflicting in a single day roughly $4,000 in costs on the plaintiff, who, unlike the defendant, took this court's order seriously.

To be sure, litigation must be nettlesome to busy in-house lawyers like Brian Cooper and Gerry Collins, who may see themselves as having such important responsibilities that, even with two month's notice, they simply cannot find the time to come to court when ordered. But, as busy as Collins and Cooper are, the court is busier. Responsible parties usually realize that settlement conferences present an invaluable opportunity to avoid astronomical litigation costs while simultaneously conserving public resources. They do not waste the court's time. They do not attempt to grind down their adversaries and the court with unseemly bush league tactics.

It is not beneath corporations like Sunbridge Healthcare to obey court orders, nor is it unreasonable to expect defendant's in-house lawyers to actually attend the very settlement conferences they attempt to control with long distance telephone calls. Court orders are not to be snickered at from afar, nor are they to be circumvented by transparent, unscrupulous subterfuges like sending

an unempowered, "straw man" representative to a conference with instructions to call the real decision maker on a cell phone. Such conduct is unconscionable and unbefitting responsible corporate officers, especially in house legal counsel who purport to have expertise in litigation. In-house lawyers who flout the law do a disservice to their employers. When in-house counsel show disrespect for the law, there is little reason to believe that the parties that employ them hold the law in any greater esteem. The defendant Sunbridge Healthcare, d/b/a Mediplex of Stamford has behaved most disappointingly. Messrs. Cooper and Collins will both appear at the September 20, 2004, conference and at the September 29, 2004, show cause hearing. They will not be heard to protest that they "can't make it."

IT IS SO ORDERED at Hartford, Connecticut, this 17th day of September, 2004.

Thomas P. Smith
United States Magistrate Judge